**Juan GONE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–99–00157–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 21, 2001.

Decided May 2, 2001.

Rehearing Overruled June 20, 2001.

Kenneth W. Smith, Houston, for appellant.

Calvin A. Hartmann, Harris County District Attorney's Office, Dan McCrory, Assistant District Attorney, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Juan Gone appeals from his conviction by a jury for the offense of aggravated sexual assault on a child. The jury assessed his sentence at fifty years' imprisonment. Gone contends that the trial court erred by allowing the State the use of perjured testimony, by refusing to give a limiting instruction on extraneous offense evidence, and by admitting testimony about misconduct without providing notice to the defendant, and by overruling his objection to the State's comment during argument about his failure to testify. He also argues that he received ineffective assistance of counsel at trial and that the sex offender statute is unconstitutional be-

cause it violates the prohibition against outlawry.

The evidence shows that Gone is the brother-in-law of the complainant's mother. The complainant testified that on seven or eight occasions over about a three-year period, Gone had sex with her when she and other children visited in his home. The complainant was thirteen at the time of trial, and testified that she was seven to ten years of age at the time of the acts. She also testified to sexual abuse by a cousin, grandfather, and two uncles (including Gone).

The incidents came to light after the complainant began residing with her father. Her parents had never been married and had separated when she was about six years old. Her father read her diary and after talking with her, contacted authorities.

■ Gone first contends that his trial was unfair because of inaccuracies in the indictment, which were taken from what he describes as the perjured testimony of police. He complains that the "on or about" date set out in the indictment is so far removed from the proof at trial that he 1) believed that he had a viable alibi, and, therefore, 2) turned down a seven-year plea bargain offer based on his belief that he had a defense to the charge.

Specifically, Gone complains about the testimony of Officer Dan Rosenberg. Rosenberg investigated the allegations and prepared a probable cause affidavit stating that he believed Gone had committed the offense on July 4, 1997. He went on in the same paragraph to state that the complainant told him Gone had committed the offense on or about July 4, 1997. At trial he testified that the complainant had not given him an exact date, but that the abuse had happened during the summer, near July 4. Gone argues that this constitutes perjury.

■ Gone did not raise this contention at trial. He did not complain about any aspect of Rosenberg's testimony on this basis, nor does he direct this court to any attempt to limit the prosecution's use of the evidence. Accordingly, error has not been preserved for appellate review. TEX. R.APP. P. 33.1 Even if it were, there is no showing that the statutory requirements of perjury were met. Perjury is defined as an offense if "with intent to deceive and with knowledge of the statement's meaning: ... [a person] makes a false statement under oath or swears to the truth of a false statement previously made...." TEX. PEN.CODE ANN. § 37.02 (Vernon 1994). In context, the evidence does not support a showing either that the statement was false or that there was any intent to deceive in connection with the misstatement.

Further, Gone cannot complain of a lack of notice because the indictment states that the offense occurred on or about July 4, 1997, and that was the substance of the proof offered at trial. The contention of error is overruled.

■ Gone next contends that the court erred by failing to give a limiting instruction on extraneous offense testimony at the time the testimony was elicited. In that testimony, the complainant testified that Gone sexually assaulted her on about eight occasions when she was between the ages of seven and ten. No details were elicited about those offenses. Before the beginning of the State's presentation of evidence, counsel asked the court for a limiting instruction. The trial court did not rule, but said that it would consider the request. Counsel did not reiterate his request when the specific testimony went before the jury, but did so after the complainant was excused. Counsel specifically asked the court to instruct the jury that it should consider the extraneous offenses

for purposes of determining the relationship between the complainant and Gone and not to use them to convict him of the offense alleged in the indictment. The trial judge asked counsel if he had a written version of the admonishment he wanted given to the jury. Counsel did not, and the court denied the request.

 Under Tex.R. Evid. 105(a), when evidence is admissible for one purpose but not for another purpose, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly...." There is no requirement that the request be in writing. Although Rule 105(a) does not specifically impose a requirement regarding when the trial court's jury instruction must be made, the Court of Criminal Appeals has recently held that "logic demands that the instruction be given at the first opportunity." *Rankin v. State*, 974 S.W.2d 707, 712 (Tex.Crim.App. 1996). The court held that when a party requests a limiting instruction at the time evidence of extraneous offenses is admitted, the trial court must instruct the jury at that time and cannot satisfy its duty by waiting until the jury charge at the close of the evidence. *See id.* at 711–13; *Mendiola v. State*, 995 S.W.2d 175, 183 (Tex. App.—San Antonio 1999), *rev'd on other grounds*, 21 S.W.3d 282 (Tex.Crim.App. 2000).

 In this situation, however, it does not appear that counsel preserved this claim of error for review. The general rule is that a defendant must make a timely objection in order to preserve an error in the admission of evidence. *See Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim.App.1995). An objection should be made as soon as the ground for an objection becomes apparent, which generally occurs when the evidence is admitted. *Id.* Although Gone eventually complained of the evidence of the extraneous offenses

and requested a limiting instruction, this objection was not made until the evidence had come in; therefore, it was not timely. *See id.; Angelo v. State*, 977 S.W.2d 169, 179–80 (Tex.App.—Austin 1998, pet. ref'd).

 Gone next contends that he was denied effective assistance of counsel at trial. The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on this claim, the appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000); *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App. 1999). To meet this burden, the appellant must prove that his attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that but for his attorney's deficiency, the result of the trial would have been different. *Tong*, 25 S.W.3d at 712. Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

 We first note that no hearing on a motion for new trial was conducted. Thus, the only information available for this court is what may be gleaned from the trial record. Gone first argues that counsel revealed his unfamiliarity with criminal law by, when the State informed him that it intended to introduce evidence of at

least six additional sexual acts, failing to ask that the State be required to elect the act on which it would proceed for a conviction. However, it appears from a review of the record that counsel was aware which acts were to be propounded as extraneous acts and which act the State was pursuing as the offense. Error has thus not been shown.

 Gone also argues that counsel was ineffective because he did not lodge timely objections and requests for limiting instructions to the extraneous offenses. We have already concluded that counsel did not preserve his complaint about limiting instructions because he did not object and timely request the instruction. The initial question is whether this failure to object necessarily constitutes ineffective assistance. The trial court submitted a limiting instruction in the jury charge.[1]

In this case, we are reviewing a direct appeal. The Court of Criminal Appeals has recently addressed a similar situation in a habeas corpus proceeding in *Ex parte Varelas*, 45 S.W.3d 627, 632, 2001 Tex. Crim.App. LEXIS 12, at *11 (Tex.Crim. App.2001). In that opinion, the Court revisited its previous, unpublished opinion on direct appeal in which it had addressed the argument that trial counsel was ineffective for failing to obtain an instruction limiting the jury's consideration of extraneous offenses.

In light of the number of ways and the degree to which a defendant can suffer harm from the admission of extraneous offense evidence, we have trouble understanding why trial counsel did not request a burden of proof or limiting instruction regarding these offenses. However, the bare record does not reveal the nuances of trial strategy. Further, to hold trial counsel's actions (or inaction) ineffective in the instant case would call for speculation and such speculation is beyond the purview of this Court. Rather, because of the strong presumptions that trial counsel's conduct falls within the wide range of reasonable professional assistance and that such conduct might be sound trial strategy, we must conclude, in light of an otherwise silent record, that appellant failed to meet his burden of showing

---

1. The jury was instructed to consider the evidence only for proper purposes, and there is no evidence to show the jury formed an opinion before beginning deliberations. In a similar situation, the Houston Court of Appeals has found these factors to be important in determining whether the lack of a timely limiting instruction harmed a defendant. *Rankin v. State*, 995 S.W.2d 210, 215 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). That court also suggested that proof of extraneous offenses—that a defendant had "touched" two other young girls at the same time and in the same way he had touched the defendant—raised at most only a "remote" danger that the evidence would be considered for the improper purpose of character conformity. This *Rankin* opinion was issued subsequent to remand of the case by the Court of Criminal Appeals. In its opinion remanding the case to the court of appeals, the Court of Criminal Appeals explicitly stated that

Limiting instructions given for the first time during the jury charge thus do not constitute an efficacious application of Rule 105(a) since it allows for the possibility that evidence will be used improperly in clear contravention to the purpose of the rule. Since limiting instructions operate most effectively when given simultaneously with the relevant evidence, it would not do to grant trial courts "discretion" to deliver those instructions, after they had been properly requested, at a less opportune time.

*Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim.App.1996). Applying this reasoning, the Houston court's argument linking the factors set out in the body of this opinion does not support the conclusion that it reached: that the proof of the extraneous offenses would likely not be considered improperly by the jury.

that his trial counsel's assistance was ineffective.

At the time of Varelas's direct appeal, the Court concluded that it was unable to determine the attorney's reasons for failing to object to the omissions in the charge, and was therefore apparently unwilling to state that the failure was necessarily error or ineffective assistance. In the habeas corpus proceeding, counsel provided an affidavit in which she simply stated that the failure was an oversight and not the result of any type of trial tactic, and the Court found ineffective assistance requiring a new trial.

We find ourselves in the same situation as the Court in its review of the direct appeal in *Varelas*. We can think of no reason why the instruction should not have been sought, but we are constrained by the high court not to speculate about possible trial strategy. Thus, we can conclude neither that failure to object was necessarily a mistake by counsel nor that the failure was not a result of strategic or tactical considerations of counsel in defending Gone.

■■■ Gone also contends that counsel was ineffective because during the punishment phase, he informed the trial court that Gone could not testify and accept responsibility for the crime because to do so would not protect his right to appeal based on error at the guilt/innocence phase. We face the same dilemma in this contention as above. The record does contain an oral motion by defense counsel at the beginning of the punishment stage asking the court to direct the prosecutor not to ask the defendant questions about his guilt and not to permit her to cross-examine him about remorse for his wrongful actions. Counsel also stated that if such questions were allowed, then his client would not testify "over the right to protect the possible error that might be made at

the guilt or innocence stage." The record does not, however, reflect any showing of the reason that Gone did not testify, nor does it contain anything to show whether legitimate tactical decisions were involved. In the absence of such proof, we cannot speculate as to the actual reasons that Gone did not testify at the punishment phase.

■■■ Gone next contends that the court erred by admitting testimony about another instance of misconduct by him with the complainant about which he was not given notice. He contends that he was entitled to notice under TEX.CODE CRIM. PROC. ANN. art. 38.37, § 3 (Vernon Supp.2001), which requires the State to give notice of intent to introduce evidence of other assaults by a defendant on the same child. However, counsel did not object to the admission of the evidence at trial, and by failing to do so, he failed to preserve any complaint on this issue. TEX.R.APP. P. 33.1; *see Thomas v. State*, 916 S.W.2d 578, 580 (Tex.App.— San Antonio 1996, no pet.). The contention is overruled.

■■■ Gone next contends that the court erred by refusing to sustain his objection to the charge. He specifically complains about an instruction stating that the limitations period "applicable to the offense of aggravated sexual assault of a child is ten years prior to April 8, 1999, the date of the filing of the indictment." He argues that the record does not show that the indictment was filed on April 8, 1999, and that the court was not authorized to so instruct the jury. The record before this court contains the indictment, and it was indeed filed on that date. Gone's argument, however, is that the trial court was not entitled to apply that observable fact and that the State was therefore required to introduce evidence to show the date of the indictment.

Thus, Gone contends that because the State did not prove the date the indictment was presented, the court should not have instructed the jury with the date of indictment as set out in the charge and that there was insufficient evidence for the jury to find that the offenses were committed before indictment and within the period of limitations.

■ The State correctly argues that the trial court could properly take judicial notice of this matter and so instruct the jury. Tex.R. Evid. 201(a), (g). However, in this case, the court did not take judicial notice, which would also have involved allowing the opposing party an opportunity to be heard on the matter. Tex.R. Evid. 201(e). Thus, judicial notice is not applicable.

The indictment is the basis and the beginning point for the legal proceeding and is accessible to both the parties and the trial judge from the beginning of the trial. The indictment is read to the jury at the beginning of the trial, is before the court at that point, and is a critical part of the record of any criminal case.

■ In the absence of any factual disagreement contesting the correctness of the date of filing shown by the clerk's date stamp on the document, we find that it is appropriate for a trial court to inform the jury of the date of the filing (or presentment) of the indictment in a jury instruction.

■ Further, any claim of error in this respect is immaterial. Gone did not object at trial to any defects in the State's proof regarding presentment. Neither did he, at any point, raise limitations as a possible defense. Thus, because the State does not have the burden of disproving a defense the defendant did not bother to raise, appellant waived any error regarding the statute of limitations. *See Proctor v. State*, 967 S.W.2d 840, 844–45 (Tex.Crim. App.1998); *Johnson v. State*, 977 S.W.2d 725, 727 (Tex.App.—Fort Worth 1998, pet. ref'd).

■ Gone next contends that the court erred by overruling his objection to a statement made by the prosecutor during argument.

The counseling he could get from community service and probation program is available in the penitentiary. If he wants help, let him go get it.... He has had seven years to get whatever help he needs, and you have heard nothing about that.

Gone objected, arguing that this was an impermissible comment on his failure to testify in his own defense.

■ The failure of an accused to testify in a criminal case may not be the subject of comment by the prosecution, for such comment is in violation of the privilege against self-incrimination in Article I, § 10 of the Texas Constitution and the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Cockerham v. State*, 729 S.W.2d 742, 746 (Tex.Crim.App.1987).

■ To violate an accused's constitutional and statutory rights, the objectionable comment, viewed from the jury's perspective, must be manifestly intended to be or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex.Crim.App.1999); *Banks v. State*, 643 S.W.2d 129, 134–35 (Tex.Crim.App.1982). Calling attention to the absence of evidence only the defendant could produce will result in reversal only if the remark can be construed to refer to appellant's

failure to testify and not to the defense's failure to produce evidence. *Id.*

The complained-of argument points out that there was no evidence that the defendant had sought counseling. This is not necessarily evidence that could only be obtained from the defendant, but could also have been brought out by testimony from other sources. It is therefore not an improper comment on Gone's failure to testify in his own defense. The contention of error is overruled.

■ Gone next contends that the requirement in the judgment that he register as a sex offender upon release from prison constitutes outlawry, which is violative of the Texas Constitution: "Sec. 20. Outlawry or Transportation for Offense. No citizen shall be outlawed. No person shall be transported out of the State for any offense committed within the same." TEX. CONST. art. I, § 20.

In all the previous Constitutions, the due course of law section contained in its list of prohibitions the statement that no person should be "outlawed" or "exiled" without due course of law. The Constitutional Convention of 1875 expanded these two words to what is now Section 20 of the present Constitution. *See* GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 73 (1977).

*Outlawry* was used in English common law to deprive a person of all legal rights, including that of protection by the law. Outlawry was sometimes used by the courts in contempt proceedings against persons, in most civil and criminal cases, who refused to appear when summoned before the court and against fugitives from justice. In instances of treason or felony, outlawry amounted to conviction and at-

tainder of blood.[2] *See* GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 73.

According to the United States Supreme Court, under the ancient doctrine of outlawry, a defendant failing to appear when summoned by proclamation to five successive county courts was declared forfeited of all his goods and chattels. *Green v. United States,* 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958).

As Gone points out in his brief, historically the term *outlawry* has carried with it various penalties and disabilities. Gone further points out that the practice of outlawry as known in England was probably never known to early Texans. Therefore, he contends that the term outlawed has a unique meaning to Texans based on experiences unique to Texas. However, many of the states adopted similar language in their constitutions, not because of experiences in that state, but for the very purpose of avoiding abuses that had occurred in England. What is generally referred to as the Bill of Rights in most state constitutions had many protections for the citizens against abuses by government that had occurred in England. So even though the process of outlawry seems generally to be unknown in Texas law and in the United States, generally, it is probably unknown because it has been prohibited by the basic documents of many of the states.

The term "outlaw" in today's parlance is generally a fugitive from the law or a person who has violated the law. *See* BLACK'S LAW DICTIONARY 1128 (7th ed. 1999).

■ We would construe the term "outlawry" and "outlaw" by the historic mean-

---

2. In the 1600's, the English King outlawed the entire Scottish clan of McGregor and made it a capital offense to bear the name McGregor.

ing to be a person who has been put out of the protection or aid of the law. *See* BLACK'S LAW DICTIONARY 1128. The Texas Supreme Court in *Peeler v. Hughes & Luce,* 909 S.W.2d 494 (Tex.1995), cites TEX. CONST. art. I, § 20 interp. commentary (Vernon 1984) stating that the "outlawry provision in our Constitution suggest [sic] that it was intended to prohibit the state only from denying a citizen all legal rights or transporting a citizen out of the state as punishment for an offense." *Peeler,* 909 S.W.2d at 499.

The interpretive commentary defines outlawry as the "withdrawal by civil society of all legal rights and protection from one of its offending members but also denied the person the right to bring a suit in the courts … to recover damages for a wrong suffered by him." *See* TEX. CONST. art. I, § 20 interpretive commentary.

The registration statute does not withdraw all legal rights and protection from Gone, nor does it deny him the right to redress in the court system. Rather, it imposes duties on him as a result of his conviction that did not otherwise exist. Those duties place restrictions on the exercise of his ability to choose or move his place of residence and require him to keep in contact with law enforcement or community supervision personnel. This is not equivalent to withdrawing his rights under our judicial system or denying him access to the courts. This provision is designed for the protection of the citizens, not as a punishment of the convicted party. This contention of error is overruled.

The judgment is affirmed.