

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JUAN CARLOS VILLALVA, | § | No. 08-13-00219-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1318126D) |
| | § | |

# **O P I N I O N**

Appellant Juan Carlos Villalva was found guilty of felony theft of a vehicle and sentenced to ten years in prison. *See* TEX.PENAL CODE ANN. § 31.03(e)(4)(A) (West Supp. 2014). Appellant complains on appeal that the cover sheets of the reporter's record erroneously indicate trial took place in July 2013, when his trial actually occurred in June 2013. We conclude this inaccuracy is insufficient to affect Appellant's substantial rights and does not impede our ability to conduct appellate review of the issues raised on appeal. Appellant also claims ineffective assistance of counsel because his trial attorney did not request a limiting instruction directing the jury to consider photographs of his tattooed arms only for the purpose of establishing his identity. We conclude Appellant has failed to meet his burden to establish that his trial counsel's failure to request a limiting instruction rendered his performance deficient. Accordingly, we affirm

Appellant's conviction.[1]

## FACTUAL BACKGROUND

Vincent Thanh Vo and friends were leaving a restaurant one evening when they saw Appellant attempting to steal Vo's motorcycle from the parking lot. They began yelling, causing Appellant to drop the motorcycle he'd been pushing across the parking lot. Appellant then ran and jumped into a black Chevrolet Tahoe parked nearby, which immediately sped off. Arlington police officers arrived quickly on the scene, and after obtaining descriptions of the get-away vehicle, relayed the information to police dispatch. Shortly thereafter, two other police officers spotted the Tahoe on a nearby highway. The officers chased the vehicle, and it eventually pulled off to the side of the road. Appellant immediately jumped out of the vehicle and ran away.

One of the officers, Officer Fred Kemp, pursued Appellant on foot. During the chase, Appellant and Officer Kemp scaled two chain-link fences, both of which were topped with barbed wire. Both Appellant and Officer Kemp lacerated their arms as they climbed over. Officer Kemp lost sight of Appellant temporarily, but eventually found him crouched behind a nearby building.

After he was subdued by a Taser, Appellant was placed in an ambulance and transported to a hospital. Arlington Officer Edward Chappell assisted with transporting Appellant to the hospital, and while there, he took two photographs of Appellant showing the lacerations on his arms. At trial, the State showed the photographs to Officer Chappell, and asked if they accurately depicted how Appellant appeared at the time he was taken to the hospital.

Appellant's attorney objected to the admission of the photographs. Defense counsel

---

[1] This case was transferred from our sister court in Fort Worth, and we decide it in accordance with the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

2

argued that the photographs were not relevant and that they were more prejudicial than probative because they showed Appellant as being "highly tattooed." Counsel asserted that the State was seeking to introduce the photographs merely to show that Appellant was tattooed.[2] In response, the prosecutor argued that the photographs were relevant: (1) to demonstrate Appellant's identity as the person that Officer Kemp had chased – pointing out that the injuries Appellant suffered during the chase were depicted in the photographs; and (2) to demonstrate Appellant's "consciousness of guilt" – pointing out that the photographs of Appellant's injuries demonstrated that Appellant had been willing to jump over two barbed wire fences, and endure the resulting injuries, in his attempt to avoid capture by the police. The prosecutor further stated that she had no plans to ask the officer or any other witness about "their belief or interpretation of any of those tattoos[.]"

The trial court overruled Appellant's objection, and allowed the photographs into evidence. No jury instructions were given, or requested, to explain why the photographs were being introduced.

During closing arguments, attorneys for both sides focused on the issue of identity, debating whether Appellant was in fact the person seen taking Vo's motorcycle, and whether the arresting officers had pulled over the right Tahoe later that night. In discounting the defense argument that the officers may have pulled over the wrong Tahoe, the prosecutor focused on the fact that Appellant had fled from police after the Tahoe was pulled over, demonstrating his "consciousness of guilt." The prosecutor further emphasized that the injuries Appellant sustained during the flight were indicative of "how badly he wanted to get away from the police." She

---

[2] We note that although Appellant intimates that the tattoos may have been of a negative nature, and therefore may have created a negative image of the Appellant in the minds of the jurors, there is nothing in the record to suggest the tattoos had any symbolic significance that would have caused the jury any particular concern.

reminded the jury that they had been given photographs to establish that Appellant was the same person who had been transported to the hospital for treatment of those injuries suffered during the chase.

## DISCUSSION

### Inaccuracies in the Court Reporter's Record

In his first point of error, Appellant claims that he is entitled to a new trial because of a conflict in the appellate record regarding when his trial took place. Appellant points out that the cover sheet of each volume of the reporter's record states that his trial took place on July 24-26, 2013, whereas virtually all other court documents in the clerk's record indicate the trial actually took place on June 24-26, 2013. Appellant further notes that the court reporter also mistakenly indicated in the first volume of the record that voir dire took place on April 24, 2013. Appellant contends this conflict between the reporter's record and the clerk's record makes it impossible to determine when his trial actually took place and renders the entire appellate record unreliable, entitling him to a new trial. We disagree.

As Appellant acknowledges, virtually every document in the clerk's record, including the judgment of conviction, the jury's verdict, the docket sheet, the trial court's certification of his right to appeal, and Appellant's own notice of appeal, indicates that the trial took place on June 24-26, 2013. In addition, even the court reporter's "reporter log" indicates that the trial began on June 24, 2013. From this, we conclude that the court reporter simply made a procedural or typographical error when she placed the July dates on the cover sheets of the reporter's record.

Further, as the State points out, Appellant has cited no authority for the proposition that the court reporter's error necessitates a new trial. A party is entitled to a new trial for problems

4

involving the reporter's record only when a "significant" portion of a reporter's record is lost or destroyed, and even then a party is not entitled to a new trial unless he can demonstrate that the missing portion of a record cannot be replaced by agreement and is necessary to the resolution of the appeal. TEX.R.APP.P. 34.6(f); s*ee Routier v. State,* 112 S.W.3d 554, 571–72 (Tex.Crim.App. 2003); *Issac v. State,* 989 S.W.2d 754, 757 (Tex.Crim.App. 1999); *see also Jimenez v. State,* 307 S.W.3d 325, 334 (Tex.App. – San Antonio 2009, pet. ref'd) ("If the missing portion of the record is not necessary to the appeal's resolution, then the loss of that portion of the record is harmless and a new trial is not required.").

Unlike situations in which a reporter's record is missing, inaccuracies in the record are governed by Rule 34.6(e), which contains no requirement that a new trial be granted when an inaccuracy appears. Instead, Rule 34.6(e)(3) states that when an inaccuracy comes to light after the reporter's record has been filed in the court of appeals and the parties cannot agree on how to correct the inaccuracy, the appellate court "may submit" the dispute to the trial court for resolution. TEX.R.APP.P. 34.6(e)(3). Given the permissive language of this Rule, we do not believe it is necessary to submit all such matters to the trial court for resolution. Instead, submission to the trial court is necessary only when there is a substantive dispute regarding the state of the evidence that might affect our ability to conduct an appellate review. *See Amador v. State,* 221 S.W.3d 666, 677 (Tex.Crim.App. 2007) (the purpose of Rule 34.6 is to "ensure[] that the record on appeal accurately reflects all of the evidence that was seen by, used by, or considered by the trial judge at the time he made a ruling"); *see also Blondett v. State,* 921 S.W.2d 469, 477 (Tex.App. – Houston [14th Dist.] 1996, pet. ref'd) ("The purpose of [predecessor to Rule 34.6(e)] is to create an accurate record on appeal.").

In the present case, the court reporter's error in placing the wrong dates on the cover sheets was simply a procedural or technical error, which does not, in and of itself, raise any questions regarding whether the remainder of the appellate record otherwise accurately reflects the substantive state of the evidence presented below. *See Amador*, 221 S.W.3d at 677, n.48 ("appellate courts must construe [the rules governing correction of the appellate record] liberally so their decisions 'turn on substance rather than procedural technicality'") (quoting *Gallagher v. Fire Ins. Exchange,* 950 S.W.2d 370, 371 (Tex.1997) (per curiam)). Appellant has not pointed to any other inaccuracies in the record. The court reporter's error is merely an isolated one and has no bearing on the accuracy of the appellate record as a whole. We therefore conclude there is no need to submit this matter to the trial court for resolution under Rule 34.6(e)(3).

We also conclude that the court reporter's technical error has no bearing on the validity of Appellant's conviction or his substantive rights. In particular, we note that the error in no way affects our ability to conduct an appellate review of Appellant's remaining point of error, and we can perceive of no other rights that might have been affected by this isolated inaccuracy in the record. As the Texas Court of Criminal Appeals has noted, the "appropriate standard of harm is to disregard an error unless a substantial right has been affected." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App. 2001) (citing TEX.R.APP.P. 44.2(b) (any error that does not affect a defendant's substantial rights must be disregarded)); *see also Johnson v. State,* 82 S.W.3d 471, 473 (Tex.App. – Austin 2002, no pet.) (the failure of the court reporter to record a bench conference was a procedural defect or irregularity, which did not affect any of the defendant's substantial rights). Finding no error affecting Appellant's substantive rights, we therefore overrule Appellant's first point of error.

**Trial Counsel's Failure to Request a Limiting Instruction**

In his second point of error, Appellant contends his trial attorney rendered ineffective assistance of counsel by failing to request a limiting instruction concerning the two photographs taken at the hospital, which showed not only the lacerations Appellant suffered on his arms after the police chase, but also that his arms were tattooed. Appellant does not challenge the trial court's decision to admit the photographs into evidence, apparently acknowledging they were relevant to establish Appellant's identity as the person who fled from police and to demonstrate his consciousness of guilt due to his flight from police. However, Appellant contends his trial counsel was ineffective because he failed to request a limiting instruction directing the jury to consider the photographs only for the "limited purposes of identity and flight as articulated by the prosecutor, and not consider them for any other purpose."

*Standard of Review and the Need for a Developed Record*

Citing the United States Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Appellant correctly points out that in order to sustain a claim for ineffective assistance of counsel, the record must demonstrate that: (1) the trial counsel's performance was below an objective standard of reasonableness, and (2) the defendant was thereby prejudiced by the trial counsel's deficient performance. Appellant further recognizes that it is the defendant's burden to "prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that but for counsel's deficiency the result of the trial would have been different." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996).

Review of counsel's performance is highly deferential, and we must make every effort to

eliminate the distorting effects of hindsight. *Wood v. State*, 4 S.W.3d 85, 87 (Tex.App. – Fort Worth 1999, pet. ref'd) (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). In addition, "[a]llegations of ineffective assistance of counsel must be firmly founded in the record because the reviewing court may not speculate about counsel's trial strategy." *Wood*, 4 S.W.3d at 87 (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994)).

In part because of the need to ascertain trial counsel's strategy, courts have long recognized that the record on direct appeal is generally insufficient to show that counsel's performance was deficient under *Strickland*; consequently, ineffective assistance claims are usually best addressed by a post-conviction writ of habeas corpus. *Lopez v. State*, 80 S.W.3d 624, 630 (Tex.App. – Fort Worth 2002), *aff'd*, 108 S.W.3d 293 (Tex.Crim.App. 2003) (citing *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex.Crim.App. 1999)).

In the majority of instances, the record on direct appeal is "simply undeveloped" and cannot adequately reflect the failings of trial counsel or "explain any trial strategy" upon which counsel's decisions may have been based. *Id.*; *see also Kennedy v. State*, 402 S.W.3d 796, 799 (Tex.App. – Fort Worth 2013, pet ref'd), *cert. denied*, 135 S.Ct. 752 (2014) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal."); *Hines v. State*, 144 S.W.3d 90, 93 (Tex.App. – Fort Worth 2004, no pet.) ("When the record is silent as to possible trial strategies undertaken by defense counsel, we will not speculate on the reasons for those strategies.").

This concept as it applies to the present case is best illustrated by what occurred in *Ex parte Varelas*, 45 S.W.3d 627 (Tex.Crim.App. 2001). In *Varelas*, the defendant initially filed a direct

8

appeal of his conviction, complaining that his trial attorney had failed to request a limiting instruction that would have directed the jury to only consider extraneous offense evidence for the limited purpose of showing the defendant's state of mind at the time of the offense. In discussing its opinion on direct appeal, the Court noted that it had trouble understanding why trial counsel did not request a limiting instruction of this nature, as the trial court would have been required to give the instruction if requested; however, the Court declined to conclude that trial counsel had been ineffective for failing to request the instruction because the record on appeal did not reflect trial counsel's strategy in failing to request the instruction. In the direct appeal, the Court went on to hold that, "because of the strong presumptions that trial counsel's conduct falls within the wide range of reasonable professional assistance and that such conduct might be sound trial strategy, we must conclude, in light of an otherwise silent record, that appellant failed to meet his burden of showing that his trial counsel's assistance was ineffective." *Varelas*, 45 S.W.3d at 632 (quoting *Varelas v. State*, No. 72178, slip op. at 8 (Tex.Crim.App. March 4, 1997)).

*Defense Counsel's Failure to Request a Limiting Instruction*

Although Appellant recognizes that, as in *Varelas*, most cases will best be resolved in a post-conviction proceeding where counsel's trial strategy may be revealed, he nevertheless points out that there may be certain instances in which a trial attorney's shortcomings are so deficient that they are apparent from the record on direct appeal, thereby rendering the need for a post-trial evidentiary hearing unnecessary. *See, e.g., Garcia v. State*, 712 S.W.2d 249, 253 (Tex.App. – El Paso 1986, pet. ref'd) (reversing defendant's conviction on direct appeal based on ineffective assistance of counsel where the trial court admitted prejudicial evidence that was clearly inadmissible and no objection from defense counsel appeared on the record). It is a "rare" case,

9

however, in which the record on direct appeal will be sufficient to demonstrate that an attorney's conduct was deficient; in order to make such a finding, the court must essentially conclude that there was "no reasonable trial strategy" that could have justified trial counsel's actions. *Andrews v. State*, 159 S.W.3d 98, 103 (Tex.Crim.App. 2005). Appellant believes this is one of those "rare" cases. We disagree.

First, we note that Appellant has not cited any authority for the proposition that the trial court would have been required to give a limiting instruction under these circumstances even if requested. The Rules of Evidence provide that "[i]f the court admits evidence that is admissible … for a purpose – but not … for another purpose – the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly." TEX.R.EVID. 105(a). Although Appellant states that the jury should have been instructed that they were only to view the photographs for the limited purposes of identity and flight, "and not consider them for any other purpose," Appellant does not make clear what the prohibited "other purpose" was.

In *Agbogwe*, the court was faced with a similar argument that defense counsel was ineffective for failing to request an instruction directing the jury to disregard certain evidence. *Agbogwe v. State,* 414 S.W.3d 820, 838 (Tex.App. – Houston [1st Dist.] 2013, no pet.). The appellant made "no argument" to explain how the evidence was admissible for one purpose but not for another, and thereby failed to demonstrate that a limiting instruction would have been required by Rule 105 if requested. *Id*. at 838-39. Therefore, Appellant did not meet "his burden of demonstrating, by a preponderance of the evidence, that defense counsel rendered ineffective assistance when he failed to request a limiting instruction[.]" *Id.* at 839. We similarly conclude that Appellant has failed to provide virtually any argument to support a conclusion that the trial

10

court would have been required to give a limiting instruction regarding the photographs if requested by trial counsel.

In any event, we need not base our decision on this factor alone, because even if an instruction to disregard would have been appropriate, we do not have a sufficient record on direct appeal from which to discern whether counsel had a reasonable trial strategy for not requesting a limiting instruction under these circumstances.

In an analogous situations involving extraneous offense evidence, virtually all courts have declined to make a finding of ineffective assistance of counsel on direct appeal based on a trial attorney's failure to request a limiting instruction even when an instruction would have been required if requested. These courts recognize that a trial attorney may have had a reasonable basis for not requesting a limiting instruction and in the absence of a record revealing trial counsel's strategy, have declined to hold that trial counsel's failure to request a limiting instruction amounted to ineffective assistance of counsel. *See, e.g., Gone v. State,* 54 S.W.3d 27, 33-34 (Tex.App. – Texarkana 2001, pet. ref'd); *Ali v. State,* 26 S.W.3d 82, 88 (Tex.App. – Waco 2000, no pet.); *see also Delgado v. State,* 235 S.W.3d 244, 250 (Tex.Crim.App. 2007) ("[T]he decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy.").

Further, several courts have noted that a trial attorney may reasonably decide, as part of her trial strategy, not to request a limiting instruction because a limiting instruction may actually have the effect of bringing unwanted attention to the extraneous offense evidence, and thereby have a negative impact on the defendant's case. *See, e.g., Cueva v. State,* 339 S.W.3d 839, 875 (Tex.App. – Corpus Christi 2011, pet. ref'd) (trial counsel may have had a legitimate belief that

requesting a limiting instruction "would have only highlighted the objectionable testimony"); *Agbogwe,* 414 S.W.3d at 837-38 (it is reasonable to conclude that defense counsel decided that seeking a limiting instruction directing the jury to disregard extraneous offense evidence would only bring further attention to the objectionable evidence); *Webb v. State*, 995 S.W.2d 295, 301 (Tex.App. – Houston [14th Dist.] 1999, no pet.) (defense counsel may have purposely decided not to request a limiting instruction regarding extraneous offense evidence to prevent further attention being drawn to the offenses); *see also McNeil v. State,* 452 S.W.3d 408, 415 (Tex.App. – Houston [1st Dist.] 2014, pet. ref'd) (record reflected that trial counsel reasonably declined to request a limiting instruction regarding extraneous offenses because he did not want "any further attention to be drawn to potential extraneous offenses or misconduct committed by the defendant").

Similarly, in the present case, although the record is silent on this point, we believe that Appellant's trial counsel may have had a reasonable trial strategy for not requesting a limiting instruction regarding the photographs in question. A limiting instruction may have brought unwanted attention to Appellant's tattoos – the very thing that Appellant wished to avoid. Accordingly, we disagree with Appellant's claim that this is one of those "rare" cases in which the record on direct appeal reveals that trial counsel's conduct fell below an objective standard of reasonableness under *Strickland*. We are unable to conclude from the record before us that trial counsel's failure to request a limiting instruction rendered his performance ineffective. We therefore overrule Appellant's second point of error.

## CONCLUSION

The trial court's judgment is affirmed.

STEVEN L. HUGHES, Justice

12

July 8, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)