

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00643-CR

Steve **HERRERA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR11845
Honorable Ron Rangel, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: July 17, 2024

AFFIRMED

In a three-count indictment, appellant Steve Herrera was charged with one count of continuous family violence and two counts of family violence assault–second offense. A jury found Herrera guilty of all three counts. In two appellate issues, Herrera argues his trial counsel was constitutionally ineffective. We affirm.

## BACKGROUND

Herrera and Vianna Rosado met at a drug house and began a romantic relationship. The two used drugs together and commonly fought. In early 2017, Vianna found out she was pregnant with Herrera's child, E.H.[1] E.H. is Vianna's third child, but the first and only with Herrera.

On February 17, 2019, Vianna was smoking a cigarette on the porch of her apartment when Herrera surprised her, grabbed her hair, pushed her against the wall, and punched her in the face. The police were called, but Herrera left before they arrived. A few weeks later, on April 3, 2019, Herrera again surprised Vianna on her apartment porch, pulled her hair, slammed her head into her neighbor's car—then onto the cement floor—and kicked her. Herrera was subsequently indicted for one count of continuous family violence and two counts of family violence assault–second offense.[2] Before trial, the State filed a notice of intent to introduce extraneous offenses, listing twenty-six offenses committed by Herrera. Herrera elected to have a trial by jury.

During trial, the jury heard testimony from several witnesses, including Vianna; Vianna's mother, Dianna Rosado; Vianna's daughter, L.A.; and San Antonio Police Department Officer William O'Neal. Vianna stated she and Herrera used drugs during their relationship, and he was abusive towards her and the children. She testified, in detail, regarding the alleged assaults that took place on February 17, 2019, and April 3, 2019. She also testified about an incident in 2017 where police were called to their residence. Vianna told the jury that on other occasions, when the police were not called, Herrera had broken into her apartment, had once fractured her shoulder, and had other girls "jump" her. The jury additionally heard testimony from Vianna that: in 2019, Child Protective Services ("CPS") took custody of her children and placed them with Dianna; she

---

[1] To protect the identity of minor children referenced in this opinion, we refer to the children by their initials.
[2] The indictment also included a repeat offender enhancement allegation.

went to rehab in 2020; and, on cross-examination by Herrera's trial counsel, she would hit Herrera during their fights.

Dianna testified that on multiple days and at various times, she picked up the children when Vianna and Herrera fought. On direct examination by the State, Dianna recounted arriving at Vianna's shortly after the February 2019 incident where Herrera "beat her up pretty bad." Dianna further told the jury Vianna was not in a good place in life when Herrera was around because she was addicted to drugs, but now, at the time of trial, she was not the same person and looked much better after rehab. On cross-examination, Dianna testified Vianna was using "heavy" drugs when the assaults occurred and that she had to call CPS on Vianna because she was concerned for her grandkids. Herrera's trial counsel extensively cross-examined Dianna regarding her inconsistent statements that Herrera ran away when the police were called following the couple's fights.

L.A. testified that when Vianna and Herrera were together, their relationship was "toxic." She also testified to personally observing violence between Vianna and Herrera. She acknowledged Vianna was a drug addict, but during physical altercations, Herrera would always put his hands on Vianna first. Like Vianna, L.A. testified that when the two were fighting, Vianna would hit Herrera back. On cross-examination, Herrera's trial counsel elicited from L.A. how Vianna struggled with addiction during her relationship with Herrera.

O'Neal, who was dispatched to Vianna's apartment on April 3, 2019, testified when he arrived at the scene, he found a frustrated and upset Vianna, who appeared to have injuries. He gave Vianna a Family Violence Threat Assessment ("Assessment") form to complete while he spoke with her. O'Neal stated the Assessment is comprised of a series of questions related to family violence and that each question was not scored the same—some questions were weighted more heavily than others. Testifying to the procedure of the Assessment, O'Neal told the jury that, after a recipient fills out the Assessment, the responding officer tallies up the score. If a recipient scores

above twenty-two, the tallying officer is to recommend that the individual go to a battered woman's shelter. O'Neal testified Vianna scored a ninety-nine. Herrera's trial counsel did not object to this line of testimony. However, on cross-examination, Herrera's trial counsel extensively questioned O'Neal regarding the Assessment's scoring system. Specifically, a "Yes" to the Assessment's first question, which Vianna answered in the affirmative, automatically assessed forty-five points to the recipient's score—well over the twenty-two-point score benchmark.

After the State rested, Herrera's trial counsel moved for a directed verdict, which the trial court denied, and the case was submitted to the jury. The jury found Herrera guilty of all three counts and, in the punishment phase, found two enhancement allegations to be true. The jury assessed punishment at fifty-two years' confinement for Count I and twenty-five years' confinement each for Counts II and III. On appeal, Herrera asserts his trial counsel was constitutionally ineffective. Specifically, Herrera contends his trial counsel was constitutionally ineffective by failing to (1) object to extraneous offenses introduced by the State and (2) object to irrelevant and prejudicial evidence.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### *Applicable Law*

To prevail on an ineffective assistance of counsel claim, Herrera must satisfy the two-element test set out in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984). First, Herrera must show his trial counsel's performance was deficient. *Id.* This element "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel's representation is constitutionally deficient if the assistance falls below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Conversely, counsel's representation does not fall below the objective standard of reasonableness simply because another would have selected a different trial

strategy. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Whether counsel's performance falls within the bounds of the objective standard of reasonableness is judged by "the prevailing professional norms." *Id.*

If Herrera can show his trial counsel's representation was deficient, he must then satisfy the second *Strickland* element. That is, Herrera must show counsel's deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. "In other words, [Herrera] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812.

Both *Strickland* elements "'must be firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). As an appellate court, we strongly presume "that counsel's conduct falls within the wide range of reasonable professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006). Under this presumption, an ineffective assistance of counsel claim is a high hill to traverse via direct appeal "because the record is generally undeveloped." *Goodspeed*, 187 S.W.3d at 392; *Jackson v. State*, 877 S.W.2d 768, 772 (Tex. Crim. App. 1994) (Barid, J., concurring) ("As a general rule, one should not raise an issue of ineffective assistance of counsel on direct appeal."). "This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight— where counsel's reasons for failing to do something do not appear in the record." *Goodspeed*, 187 S.W.3d at 392.

This is not to say an appellant may never develop a sufficient record to vindicate a counsel's ineffectiveness via direct appeal. An appellant may develop a sufficient record through a motion

for new trial or other post-judgment motion that provides counsel with an opportunity to, for example, provide reasoning and guidance on trial strategy—which may or may not justify counsel's action or inaction. *Macias v. State*, 539 S.W.3d 410, 417 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotations omitted).

*Discussion*

We will briefly address the parties' arguments and corresponding authority connected to each of Herrera's two ineffective assistance of counsel points of error. Consequently, we overrule both points of error because Herrera failed to satisfy the *Strickland* elements.

**A. Issue One: Extraneous Offenses**

Herrera argues his trial counsel was ineffective for failing to object to numerous portions of testimony from Vianna, Dianna, and L.A. Herrera contends the improper testimonies reference extraneous offenses offered to prove Herrera's character conformed with the acts alleged in the indictment and, additionally, the testimonies contained impermissible hearsay. Herrera concludes the testimonies propounding these inadmissible extraneous offenses were the product of improper leading questions asked by the State. In response, among other arguments, the State argues Herrera failed to carry his burden to develop a record evidencing a constitutionally deficient and prejudicially outcome-changing performance by his trial counsel.

"Extraneous-offense evidence is generally admissible if the evidence is relevant to a fact of consequence apart from its tendency to prove character conformity." *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022); TEX. R. EVID. 404(b). For example, "evidence of other crimes or wrongs may be admissible if it tends to establish some elemental fact, such as identity, intent, or knowledge; tends to establish some evidentiary fact, such as motive, opportunity, plan,

or preparation, leading inferentially to an elemental fact; or rebuts a defensive theory by showing, e.g., absence of mistake or lack of accident." *Gonzalez v. State*, 541 S.W.3d 306, 310 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "If the trial court determines the offered evidence has independent relevance apart from or beyond character conformity, the trial court may admit the evidence and instruct the jury the evidence is limited to the specific purpose the proponent advocated." *Id.*

Additionally, in criminal prosecutions, Article 38.371 of the Texas Code of Criminal Procedure allows extraneous offense evidence for a purpose other than establishing character conformity when the victim is a person in a dating relationship with the defendant. TEX. CODE CRIM. PROC. art. 38.371(a). Article 38.371 "expressly allows, in dating and family violence cases, 'evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim.'" *Rodriguez v. State*, 678 S.W.3d 375, 386 (Tex. App.—Dallas 2023, pet. ref'd) (quoting TEX. CODE CRIM. PROC. art. 38.371(b)). "Extraneous-offense evidence held admissible under Article 38.371 has included proof that (1) explains why a complainant of domestic violence is unwilling to cooperate with prosecution, (2) confirms the victim's initial—and later recanted—statements to police; or (3) contextualizes the nature of the relationship between the complainant and the assailant." *Rodriguez*, 678 S.W.3d at 386 (citing cases).

### B. Issue Two: Irrelevant and Prejudicial Evidence

In his second issue, Herrera argues his trial counsel failed to object to evidence that was irrelevant and highly prejudicial. Specifically, Herrera avers his trial counsel was deficient by failing to object to O'Neal's testimony regarding the Assessment and by failing to object to any testimony comparing and contrasting Vianna's appearance and mental state at the time of the

alleged assaults and during the trial. Just like its response to Herrera's first point of error, the State, among other arguments, contends Herrera failed to carry his burden to develop a record evidencing a constitutionally deficient and prejudicially outcome-changing performance by his trial counsel.

"Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). Evidence is relevant if it is material and probative. *Id.* Material and probative evidence—i.e., relevant evidence—may, however, be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. The trial court has wide discretion in conducting a probative versus prejudicial balancing of the evidence, and Rule 403 itself "favors the admission of relevant evidence over its exclusion." *Hall v. State*, 663 S.W.3d 15, 34 (Tex. Crim. App. 2021).

### C. Analysis

On this record, we conclude Herrera did not establish that his trial counsel's performance fell below an objective standard of reasonableness because he failed to raise objections to extraneous offenses referenced during portions of testimony from Vianna, Dianna, and L.A. Likewise, we conclude Herrera did not establish that his trial counsel's performance fell below an objective standard of reasonableness because he failed to object to O'Neal's testimony regarding the Assessment or to the general testimony about Vianna's past and present appearance and state of mind.

Herrera raises his ineffective assistance of counsel claims for the first time on appeal. Herrera did not file a motion for new trial or any other post-judgment motion complaining of his

trial counsel's performance to develop a record applicable to his ineffective assistance claim.[3] *Goodspeed*, 187 S.W.3d at 392; *Macias*, 539 S.W.3d at 417. Although Herrera may raise these issues and arguments for the first time on appeal, this record is silent concerning trial counsel's reasons for deciding to refrain from objecting. *See Lopez*, 343 S.W.3d at 144; *Gone v. State*, 54 S.W.3d 27, 33–34 (Tex. App.—Texarkana 2001, pet. ref'd) (overruling ineffective assistance claim where the record was silent on trial counsel's reasoning to refrain from objecting to references to extraneous offenses); *see also Haagensen v. State*, 346 S.W.3d 758, 766 (Tex. App.—Texarkana 2011, no pet.) ("Trial counsel's strategy in not objecting may have been an effort to build rapport with the jury and prevent the jury from concluding he was attempting to hide information from them. Counsel also may have not objected because an objection would have emphasized the evidence."). Accordingly, we conclude Herrera has failed to rebut the presumption that his trial counsel's performance fell within an objective standard of reasonableness based on the prevailing professional norms. *Lopez*, 343 S.W.3d at 144; *Garcia v. State*, 57 S.W.3d 436, 440–41 (Tex. Crim. App. 2001); *Vega v. State*, 610 S.W.3d 79, 84 (Tex. App.—San Antonio 2020, no pet.).

Further, Herrera failed to demonstrate he was prejudiced by his trial counsel's alleged failures to object. *Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 812. Herrera generally argues his trial counsel's failure to raise objections severely undermines confidence in the jury's verdict. "To demonstrate prejudice, appellant [is] required to show that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different." *Macias*, 539 S.W.3d at 417–18. Herrera does not explain how the sustaining of these objections would have led to the reasonable probability of a different result. *See id.* at 418 (finding

---

[3] Herrera filed a perfunctory motion for new trial post-judgment; however, he did not raise an ineffective assistance of counsel argument or otherwise develop a record relevant to his ineffective assistance claim.

appellant failed to show prejudice where he "merely argu[ed] that 'there is no fair assurance that [appellant's] unique and diverse frailties would not have warranted a different verdict or a less harsh sentence had the State's expert not explicitly vouched for the complainant's credibility.'"); *Osorio v. State*, 994 S.W.2d 249, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Accordingly, Herrera has failed to carry his burden on appeal. Therefore, we overrule his first and second points of error.

## CONCLUSION

Having overruled each of Herrera's issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH